# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ARIEL FINKELSTEIN-PONCE DE LEON, et al.,**
    Plaintiffs,

v.

**ALCON PUERTO RICO, INC., et al.,**
    Defendants.

Civil No. 17-2382 (ADC)

## OPINION AND ORDER

Defendants Alcon Puerto Rico, Inc. and Alcon Laboratories, Inc. (collectively, "defendants"[1]) filed a motion to dismiss. **ECF No. 12**. Plaintiff Ariel Finkelstein-Ponce de León ("Finkelstein")[2] opposed the motion. **ECF No. 14**. On August 9, 2018, defendants filed a reply with leave of the Court. **ECF No. 20**. After a thorough review of the parties' motions, the Court grants defendants' motion to dismiss.

### I. Background

Finkelstein filed suit based on the Court's federal question jurisdiction, alleging age discrimination and several claims under Puerto Rico law related to defendants' wrongful termination of employment. **ECF No. 7**. Finkelstein was hand delivered a termination letter

---

[1] According to defendants, the named co-defendants Novartis SA, Novartis Corp., and Novartis Services, Inc., are non-existent entities. The plaintiffs do not address this assertion in their filings. **ECF No. 12** at 16 n.5. The documents appended to the parties' filings, and statements in the complaint, suggest, at least at some point, that a "Novartis" entity was affiliated with defendants. Nonetheless, the resolution of this ambiguity is unnecessary to the Court's ruling.

[2] The co-plaintiffs in this case are Finkelstein's wife, the Conjugal Partnership, and children, all asserting derivative claims under Puerto Rico law. In general, the Court refers only to Finkelstein. **ECF No. 7** at 3.

("termination letter") from defendants on June 24, 2016. **ECF Nos. 7** at 11; **14-1.** The termination letter indicated that Finkelstein was "released as of today [June 24, 2016] from work."[3] **ECF No. 14-1** at 1. Furthermore, the letter noted that Finkelstein's employment contract required six months' notice prior to termination and indicated that the parties' "employment relationship" would end in six months, on December 31, 2016, denoting that date as "the 'Termination Date.'" *Id*. at 1. Additionally, the termination letter described this arrangement as "Garden Leave." *Id*. at 1-2. Specifically, defendants merely "expect[ed]" that Finkelstein "remain available to [his] supervisor within reasonable limits for any information," but otherwise required that he remit his work identification badge to Human Resources that day and return his work-issued cell phone within a three-week span. *Id.*

Finkelstein subsequently filed a charge under the Age Discrimination in Employment Act ("ADEA") with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2017. **ECF No. 7** at 12, 15. He notes that this filing occurred "within 180 days of the effective date of his termination of employment," i.e., December 31, 2016. *Id*. at 15. He also made written demands for relief from defendants during 2017. *Id*. Finkelstein filed this case on December 29, 2017, **ECF No. 1**, and filed an amended complaint on April 11, 2018, **ECF No. 7**.

---

[3] Plaintiff appended the termination letter to his opposition to the motion to dismiss. **ECF No. 14-1**. Because the termination letter's authenticity is undisputed, "central to plaintiff['s] claims, and sufficiently referred to in the [amended] complaint," the Court may properly consider it in ruling on the motion to dismiss. *See In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008); **ECF Nos. 7** at 11; **14-1**.

Defendants seek to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). **ECF No. 12** at 4. Specifically, defendants assert that Finkelstein failed to timely file an administrative claim under the ADEA with the EEOC (or the equivalent state entity) within the statutorily-mandated timeframe, thereby depriving the Court of subject matter jurisdiction. *Id*. at 6–9.

## II. Legal Standard

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). A complaint, so construed, must be dismissed under Rule 12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims.

Courts also favorably construe a complaint when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "If the factual

allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Additionally, "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (alteration in original) (citation and internal quotation marks omitted). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Id.* (citation and internal quotation marks omitted).

The ADEA requires as a prerequisite to suit in federal court that an individual first file an administrative claim with the EEOC "within 180 days after the alleged unlawful practice occurred," or, in some cases, "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d). *See Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 277–78 (1st Cir. 1999).

### III. Analysis

The alleged discriminatory act in this case is Finkelstein's alleged unlawful termination. Defendants communicated their termination decision on June 24, 2016, by hand-delivering the termination letter. The termination letter released Finkelstein from work as of June 24, 2016, but identified his "Termination Date" as December 31, 2016. **ECF No. 14-1**. This is the source of the

parties' dispute. Finkelstein claims that the statutory clock under the ADEA began ticking after the December 31, 2016 "Termination Date," while defendants assert that it began upon Finkelstein's receipt of the termination letter on June 24, 2016.

"It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 750 (1st Cir. 1994) (collecting cases); *accord Alicea v. Ondeo De P.R.*, 389 F. Supp.2d 269, 275 (D.P.R. Sept. 26, 2005) ("[I]t has been unquestionably recognized in the federal forum that the time limitation period in an employment discrimination case begins to accrue at the time of the discriminatory act itself rather than the time wherein its consequences take effect.").

The Supreme Court in *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980), addressed a scenario similar to the case at bar. There, Delaware State College denied the plaintiff tenure, allegedly on the basis of the plaintiff's race, and offered him "a 1-year 'terminal' contract" containing "explicit notice that his employment would end upon its expiration." *Id*. at 252–53, 258. The contract allowed the plaintiff to work an additional school year at the College after being denied tenure. *Id*. at 253. The plaintiff asserted that his discriminatory termination claim did not accrue for EEOC filing purposes until that one-year contract expired on June 30, 1975, because that is the date his termination actually took effect. *Id*. at 252–55. The Supreme Court rejected this "continuity of employment" argument, holding that, "without more," it was "insufficient to prolong the life of a cause of action for employment discrimination." *Id*. at 257.

Specifically, the Court explained that the only discriminatory action alleged by the plaintiff related to the College's tenure decision; the plaintiff did not allege any discriminatory acts "that continued until, or occurred at the time of, the actual termination of his employment." *Id*. at 257 & n.8. Thus, the Court held, the tenure decision was the sole discriminatory act at issue and therefore the date the College communicated that decision to the plaintiff marked the start of the EEOC filing period. *Id*. at 259.

As in *Ricks*, the defendants in this case made and communicated to Finkelstein their employment decision on June 24, 2016, though Finkelstein's employment did not literally cease until December 31, 2016. Thus, June 24, 2016 marks the day "the alleged unlawful practice occurred," triggering the EEOC clock. *See* 29 U.S.C. § 626(d). Finkelstein filed a charge with the EEOC approximately 371 days later, on June 29, 2017, rendering his EEOC filing untimely under both the 300 and 180-day deadlines imposed by the statute. Accordingly, Finkelstein's ADEA claim is untimely.

To the extent Finkelstein suggests principles of equitable tolling apply to salvage his ADEA claim, the Court is not persuaded. **ECF No. 14** at 6–8. "The [EEOC] filing requirement is mandatory but not jurisdictional and, like a statute of limitations, is subject to equitable exceptions." *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 46 n.6 (1st Cir. 2005). "Courts generally weigh five factors when considering whether to allow equitable tolling," including, "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of

prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the [filing] requirement." *Id*. at 48 (alteration in original) (citation and internal quotation marks omitted). However, "[f]ederal courts should not apply equitable tolling liberally to extend time limitations in discrimination cases." *Chico-Vélez v. Roche Prods., Inc.*, 139 F.3d 56, 58–59 (1st Cir. 1998).

Finkelstein indicates that he remained in Geneva, Switzerland, where he was stationed while working for defendants, after he received the termination letter. **ECF No. 14** at 4. Implicit in this geographical hurdle is the assertion that the Court should grant leeway due to the continental divide impeding Finkelstein's access to an EEOC office. Defendant claims this is a nonstarter because the EEOC allows claims to be filed online and by mail and more so, because Finkelstein had retained the services of an American attorney based in Puerto Rico sometime shortly after receiving the termination letter. **ECF No. 20** at 3–7. The Court agrees with defendant that Filkenstein's untimely actions do show lack of diligence and unreasonableness in remaining ignorant of the specific legal requirements. Finkelstein's physical location in Switzerland is of no import where he, or his purported U.S.-based attorney, could have timely pursued an EEOC claim online or by mail. *See Bonilla*, 194 F.3d at 278–79 (holding that because equitable tolling is reserved "for exceptional cases," it is not warranted when the plaintiff fails to advance or develop argumentation in support of tolling or "allege any facts that remotely suggest a plausive basis for such relief").

## IV. Conclusion

Defendants' motion to dismiss is **GRANTED**. **ECF No. 12**. The case is hereby dismissed with prejudice. Clerk of Court is to enter judgment accordingly. Defendants' motion to stay proceedings pending resolution of their motion to dismiss, **ECF No. 21**, is **MOOT**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 26th day of March, 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**